UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KEVIN J. CONROY, individually d/b/a ACT THREE
ASSOCIATES a/k/a ACT 3 ASSOCIATES,   Index No.   8:18-CV-1308 (BKS/CFH)

                             Plaintiff,   **COMPLAINT**

    -against -

HIGH PEAKS DENTAL PROFESSIONAL
PARTNERSHIP, HIGH PEAKS REALTY, LLC,
WILLIAM P. CALDON, DMD, and
MICHAEL T. O'CONNOR, DDS,

                             Defendants.
-----------------------------------------------------------------X

      Plaintiff, Kevin J. Conroy, by and through his attorneys, Rogers, Habas & Eisen, P.C., as and for his complaint herein, allege as follows:

### THE PARTIES

    1.    At all times hereinafter mentioned Plaintiff, Kevin J. Conroy (hereinafter "Plaintiff" or "Mr. Conroy"), is an individual and resident of the County of Clinton, State of New York.

    2.    At all times hereinafter mentioned Plaintiff Act Three Associates, a/k/a Act 3 Associates (hereinafter "Act Three"), is a business owned and operated by Mr. Conroy.

    3.    Upon information and belief, High Peaks Dental Professional Partnership (hereinafter "High Peaks Dental" or "HPD"), was and is a domestic professional partnership with its principal place of business located at 675 NY-3, Suite 2011, Plattsburg, County of Clinton, State of New York.

    4.    Upon information and belief, High Peaks Realty, LLC (hereinafter "High Peaks Realty" or "HPR"), was and is a domestic limited liability company organized and existing under

1

the laws of the State of New York, with its principal place of business located at 675 NY-3 Suite 100, Plattsburg, County of Clinton, State of New York.

5. Upon information and belief and at all times hereinafter mentioned, Defendant William P. Caldon, DMD, (hereinafter "Dr. Caldon"), is an individual and citizen of the County of Clinton, State of New York, partner of High Peaks Dental and member of High Peaks Realty.

6. Upon information and belief and at all times hereinafter mentioned, Defendant Michael T. O'Connor, DDS, (hereinafter "Dr. O'Connor"), is an individual and citizen of the County of Clinton, State of New York, partner of High Peaks Dental and member of High Peaks Realty.

7. Upon information and belief, Defendants Dr. O'Connor and Dr. Caldon are fiduciaries of an Employee Welfare Benefit Plan as defined under ERISA (29 U.S.C. § 1002(1)) (the "Plan").

## JURISDICTION AND VENUE

8. This action is brought in part under the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1002(1)), for violations of Sections 1025 and 1104 of ERISA.

9. Jurisdiction is conferred upon the Court by Sections 1132(e)(1) and 1132(f)(1) of ERISA.

10. Venue properly lies in the United States District Court in the Northern District of New York, under Section 1132(e)(2) of ERISA because the Plan is administered in this District, some or all of the violations for which relief is sought occurred in this District and some or all of the Defendants reside and/or transact business in this District.

11. This action is brought by a beneficiary of the Plan for damages and equitable relief, including but not limited to, restitution by HPD, Dr. Caldon and Dr. O'Connor, for

2

violation(s) of their fiduciary duties, including but not limited to, failing to provide Plaintiff with plan statements as required by Section 1025(a)(1)(A), and failing to properly fund the Plan as required by Section 1082 of ERISA.

## BACKGROUND

### Employment with High Peaks Dental and High Peaks Realty

12. In or about March 2012, Mr. Conroy was hired by HPD to perform certain functions to assist Dr. Caldon and Dr. O'Connor with the day to day affairs of HPD, including recruiting associate dentists, oversight and implementation of marketing plans and strategies, and overseeing the implementation of financial requests made by Dr. Caldon and Dr. O'Connor.

13. To assess the cashflow of HPD Mr. Conroy was asked to take on additional responsibilities. He assisted in the role of office manager and negotiated third party contracts for maintenance services which reduced payments to contractors.

14. Mr. Conroy's role eventually expanded and he became a property manager for HPR.

15. In that role he was responsible for the collection of rents from tenants and contracted with third parties to provide maintenance services to the various properties owned by HPR and oversaw the marketing and financing departments for HPR.

16. Mr. Conroy was an Independent Contractor for HPR and received an annual 1099.

17. In an attempt to lower operating costs for both HPD and HPR, Act Three was hired to perform various tasks for the benefit of HPD and HPR.

18. HPD and HPR purchased maintenance equipment such as an all-terrain vehicle to be used by Act Three for the upkeep of the properties owned by HPR including the premises occupied by HPD.

19.     For example, Act Three plowed the parking lots and sidewalks using the all-terrain vehicle.

20.     At the direction of Dr. Caldon and Dr. O'Connor Cash disbursements and checks were paid to Act Three by Mr. Conroy, in his capacity as officer manager, for payment of the maintenance services being provided by Act Three.

21.     In or about December 2015, Mr. Conroy resigned from his position with HPD and HPR.

**Unpaid Wages and Benefits**

22.     Throughout the course his employment with HPD, Mr. Conroy participated in the Plan.

23.     According to the terms of HPD's employee handbook (the "Employee Handbook"), HPD was required to pay into Mr. Conroy's Plan account an amount matching that which Mr. Conroy deposited into his Plan account by way of payroll deductions, of up to three (3%) percent of Mr. Conroy's gross earnings for the calendar year.

24.     Although Mr. Conroy had numerous contributions deducted from his wages, however, no statements were provided by HPD showing timely contributions to the Plan.

25.     Mr. Conroy requested statements on numerous occasions, however HPD never provided same.

26.     Mr. Conroy has nothing in his possession evidencing timely contributions to the Plan by HPD.

27.     Upon information and belief, there were periods of time where deductions were being taken from Mr. Conroy's wages and no contributions were being made to the Plan by HPD.

28. Additionally, at the time of his resignation, Mr. Conroy had ten (10) days of unpaid vacation time which had accrued.

29. According to the Employee Handbook, unused vacation time, accrued through the last day of employment, was to be paid out to employees that either resigned or were terminated.

30. Furthermore, Mr. Conroy was not paid for the period of December 12, 2015 although he worked his regular schedule.

31. Despite Mr. Conroy's request for reimbursement of his unused vacation days and unpaid wages, he was not, and has yet to be, reimbursed or paid back for those accrued and unused vacation days and missed payroll by HPD.

**Separate Action**

32. On or about April 20, 2016, HPD, HPR, Dr. O'Connor and Dr. Caldon ("Defendants") commenced a proceeding against Mr. Conroy in the Supreme Court of the State of New York, County of Clinton (File No. 2016-00000476) (the "Separate Action").

33. As a result of the Separate Action, Mr. Conroy paid restitution for all claims against him in the sum of $475,904.13.

34. Upon information and belief, Defendants are still in possession of various items that Mr. Conroy paid restitution towards, including but not limited to, office chairs, furniture, and computer equipment.

**Promotional Materials**

35. On or about April 5, 2017, it was brought to Plaintiff's attention that a promotional video featuring Plaintiff was being used on HPD's website without his permission.

36. Upon information and belief, the video is being used for the purposes of advertising and promoting Defendants' business through Mr. Conroy's testimonial.

37. Upon information and belief, Mr. Conroy's image and likeness are still being used without his consent on HPD and HPR's YouTube Channel in furtherance of advertising their business.

## AS AND FOR FIRST CAUSE OF ACTION
## AGAINST HPD
### (Breach of Fiduciary Duty Under 29 U.S.C. 1132(a)(2))

38. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth at length herein.

39. Pursuant to ERISA § 1025, HD was required to provide a pension benefit statement to employees at least once each calendar quarter ("Quarterly Statements").

40. Despite Mr. Conroy's multiple requests to HPD for the Quarterly Statements, HPD failed to provide him with same.

41. By failing to provide him with the Quarterly Statement, HPD breached its fiduciary duty to Plaintiff.

42. Based on the foregoing, HPD has breached its fiduciary duty to Plaintiff and has damaged Plaintiff in an amount to be determined plus interest from December 2015, and costs and disbursements of this action including reasonable attorneys' fees incurred by Plaintiff.

## AS AND FOR SECOND CAUSE OF ACTION AGAINST
## HPD, DR. O'CONNOR AND DR. CALDON
### (Breach of Fiduciary Duty Under 29 U.S.C. § 1140)

43. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth at length herein.

44. Pursuant to ERISA (29 U.S.C. § 1140), actions taken by employers that interfere with an employee's attainment of any right provided by a plan are strictly prohibited.

45. Plaintiff, on multiple occasions, sought to obtain quarterly-pension statements from HPD, Dr. O'Connor and Dr. Caldon that they were obligated to provide under 29 U.S.C. § 1025.

46. HPD, Dr. O'Connor and Dr. Caldon repeatedly failed to provide said statements, and thus breached their obligation by interfering with Plaintiff's right of access.

47. Based on the foregoing, HPD, Dr. O'Connor and Dr. Caldon have interfered with Plaintiff's ERISA rights and have damaged Plaintiff in an amount to be determined plus interest from December 2015 and costs and disbursements of this action including reasonable attorneys' fees incurred by Plaintiff.

## AS AND FOR THIRD CAUSE OF ACTION AGAINST DEFENDANTS HPD, DR. CALDON AND DR. O'CONNOR
**(Breach of Contract)**

48. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth at length herein.

49. On or about March 2012, Plaintiff received the Employee Handbook, which contained the company policies and procedures.

50. Plaintiff was required to review and agree to the terms set forth in the Employee Handbook as a condition of his employment.

51. The Employee Handbook contained a provision that stated, "upon termination of employment, you will be paid for unused vacation time which has been earned through your last day of work."

52. Following Plaintiff's resignation of employment, HPD, Dr. O'Connor and Dr. Caldon were obligated to pay out to Plaintiff the amount for unused vacation time, up to and including the last day of Plaintiff's employment.

53. HPD, Dr. O'Connor and Dr. Caldon breached the terms Employee Handbook by failing to pay for the unused vacation time Plaintiff had earned throughout the course of his employment.

54. Based on the foregoing, HPD, Dr. O'Connor and Dr. Caldon have breached the terms of the Employee Handbook and have damaged Plaintiff in an amount to be determined plus interest from December 2015, and costs and disbursements of this action including reasonable attorneys' fees incurred by Plaintiff.

### AS AND FOR FOURTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Unjust Enrichment)

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth at length herein.

56. Plaintiff has paid restitution in full for all property that was the subject of the Separate Action.

57. Defendants have been unjustly enriched by the overpayment of funds from Mr. Conroy in the sum of $400,000 and by the retention of property which, upon information and belief, remains in Defendants possession.

58. Defendants wrongfully obtained property, income, and ownership interests under such circumstances that in good conscience should not be retained by Defendants.

59. The law imposes a duty on Defendants to repay or return said income and/or property to Plaintiff.

60. Based on the foregoing, Defendants have been unjustly enriched by Plaintiff and have damaged Plaintiff in an amount to be determined plus interest from December 2015, and costs and disbursements of this action including reasonable attorneys' fees incurred by Plaintiff.

### AS AND FOR FIFTH CAUSE OF ACTION
### <u>AGAINST ALL DEFENDANTS</u>
### (Conversion)

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth at length herein.

62. Upon information and belief, Defendants intentionally exerted control over the funds and assets of Mr. Conroy, and to date still wrongfully detains those assets.

63. The aforesaid diversion and detention of funds and property constitutes an unlawful conversion of Plaintiff's property.

64. Based on the foregoing, Defendants have converted funds and property belonging to Plaintiff and have damaged Plaintiff in an amount to be determined plus interest from December 2015, and costs and disbursements of this action including reasonable attorneys' fees incurred by Plaintiff.

### AS AND FOR SIXTH CAUSE OF ACTION
### <u>AGAINST DEFENDANT HPD and HPR</u>
### (Misappropriation of Likeness or Image pursuant to
### N.Y. Civil Rights Law § 51)

65. Plaintiff repeats, reiterates and realleges each and every one of the individual paragraphs above as if fully set forth herein

66. As set forth herein, HPD and HPR have violated N.Y. Civil Rights Law § 51 by continuing to publish and misappropriate Mr. Conroy's image on the HPD and HPR YouTube Channel without his consent or approval.

67. Upon information and belief, the HPD and HPR website and YouTube Channel were designed to attract business and generate revenue for HPD.

68. Upon information and belief, Defendants were, at all times relevant, aware that they never received Mr. Conroy's permission or consent to continue the use of his image on any

9

website, social media platform, or on any other medium, for the purpose of promoting High Peaks Dental.

69. At no point did HPD or HPR ever compensate Plaintiff for its use of his images or likeness, and no applicable privilege or authorization exists for HPD or HPR's use of Plaintiff's images or likeness.

70. Due to HPD and HPR's violation of Plaintiff's rights of privacy and publicity under N.Y. Civil Rights Act § 51, Plaintiff has been damaged in an amount to be determined, with any other and further relief this Court deems appropriate.

71. Pursuant to N.Y. Civil Rights Act § 51, Plaintiff hereby requests an Order permanently enjoining HPD and HPR from violating Plaintiff's right to privacy.

72. Based on the foregoing, HPD and HPR have misappropriated the likeness and image of Plaintiff and pursuant to N.Y. Civil Rights Law § 51, have damaged Plaintiff in an amount to be determined plus interest from December 2015, and costs and disbursements of this action including reasonable attorneys' fees incurred by Plaintiff.

**WHEREFORE,** Plaintiff, Kevin J. Conroy, demands judgment against Defendants, High Peaks Dental Professional Partnership, High Peaks Realty, LLC, William P. Caldon, DMD, and Michael T. O'Connor, DDS, as follows:

    i. On the first cause of action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) against High Peaks Dental, in an amount to be determined but believed to be no less than $400,000 and costs and disbursements from this action including reasonable attorneys' fees incurred by Plaintiff;

    ii. On the second cause of action for ERISA violations by High Peaks Dental, Dr. O'Connor and Dr. Caldon, in an amount to be determined but believed to be no

less than $400,000, and costs and disbursements from this action including reasonable attorneys' fees incurred by Plaintiff;

iii. On the third cause of action for breach of contract against High Peaks Dental, Dr. O'Connor and Dr. Caldon, in an amount to be determined, but believed to be no less than $400,000, and costs and disbursements from this action including reasonable attorneys' fees incurred by Plaintiff;

iv. On the fourth cause of action for unjust enrichment against all Defendants, in an amount to be determined, but believed to be no less than $400,000 and costs and disbursements from this action including reasonable attorneys' fees incurred by Plaintiff;

v. On the fifth cause of action for conversion against all Defendants, in an amount to be determined, but believed to be no less than $400,000, and costs and disbursements from this action including reasonable attorneys' fees incurred by Plaintiff;

vi. On the sixth cause of action for misappropriation of likeness or image in violation of N.Y. Civil Rights Law § 51 against High Peaks Dental and High Peaks Realty, in an amount to be determined but believed to be no less than $400,000, and costs and disbursements from this action including reasonable attorneys' fees incurred by Plaintiff; plus an order enjoining Defendants from continuing to use Mr. Conroy's image or likeness for advertising or promotional purposes;

For such other and further relief as to this Court may seem just and proper, together with the costs, disbursements and attorneys' fees of this action.

Dated: Orangeburg, New York
      November 7, 2018

_/s/ Patricia Habas_
Patricia Habas, Esq.
ROGERS, HABAS & EISEN, P.C.
Attorneys for Plaintiff
Kevin J. Conroy
100 Dutch Hill Road, Suite 380
Orangeburg, NY 10962
(845) 359-5400