UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN J. CONROY, individually and d/b/a ACT THREE
ASSOCIATES a/k/a ACT 3 ASSOCIATES,

                                                                                          8:18-cv-01308 (BKS/CFH)

                              Plaintiff,

v.

HIGH PEAKS DENTAL PROFESSIONAL
PARTNERSHIP; HIGH PEAKS REALTY, LLC;
WILLIAM P. CALDON, DMD; and MICHAEL T.
O'CONNOR, DDS,

                              Defendants.
_____

**Appearances:**

*For Plaintiff:*
Patricia Habas
Rogers, Habas & Eisen, P.C.
100 Dutch Hill Road, Suite 380
Orangeburg, NY 10962

*For Defendants:*
William S. Nolan
Tara MacNeill
Whiteman Osterman & Hanna LLP
Attorneys for Defendants
One Commerce Plaza
Albany, NY 12260

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

       This action arises from a dispute between Plaintiff Kevin J. Conroy, his former employer,

Defendant High Peaks Dental Professional Partnership ("HPD"), and HPD's owners, Defendants

William Caldon and Michael O'Connor. (Dkt. Nos. 1, 17-23). Plaintiff brings two claims under

section 502 of the Employment Retirement Income Security Act of 1974 ("ERISA") (codified at 29 U.S.C. § 1132), alleging that Defendants failed to "provide a pension benefits statement to [him] at least once each calendar quarter" and "interfer[ed] with Plaintiff's right of access" to benefits in violation of sections 105 and 510 of ERISA (codified at 29 U.S.C. §§ 1025 and 1140), respectively. (Dkt. No. 17-23, ¶¶ 35–44). He also asserts state law claims for unjust enrichment, conversion, misappropriation of his likeness, fraud, and fraudulent inducement. (*Id.* ¶¶ 45–87). Plaintiff seeks $400,000 in damages, costs and attorney's fees, and "an order enjoining Defendants from continuing to use [his] image or likeness for advertising or promotional purposes." (*Id.* at 10–11). Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 13). Plaintiff opposes the motion and cross-moves for leave to amend his Complaint. (Dkt. No. 17-3). For the reasons that follow, Defendants' motion is granted and Plaintiff's motion is denied.

## II.  PLAINTIFF'S CROSS-MOTION TO AMEND

With his response in opposition to Defendants' motion for judgment on the pleadings, Plaintiff cross-moves for leave to amend his Complaint and submits a proposed Amended Complaint. (Dkt. No. 17-3, at 21; Dkt. No. 17-23). In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

The substance of Plaintiff's opposition to Defendants' motion generally argues the sufficiency of the allegations in the proposed Amended Complaint, rather than the Complaint as

originally filed. (*See, e.g.*, Dkt. No. 17-3, at 7 (abandoning breach of contract claim), 20–21 (arguing sufficiency of allegations supporting claims for fraud and fraudulent inducement)). Furthermore, Defendants' reply papers contend that the claims asserted in the proposed Amended Complaint remain "futile as pleaded," (Dkt. No. 18, at 4–7, 17–18), for many of the same reasons articulated in their opening memorandum of law, (Dkt. No. 13-4). Accordingly, Defendants' motion for judgment on the pleadings will be considered in light of the proposed Amended Complaint. If the proposed Amended Complaint cannot survive the motion to dismiss, then it will be dismissed as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."); *Kane v. Krebser*, 44 F. Supp. 2d 542, 545 (S.D.N.Y. 1999) ("Since plaintiff provided the Court with his proposed amended complaint, and since defendants argue in their reply brief that all arguments made in their original 12(c) motion apply with equal force to plaintiff's proposed amended complaint, our analysis will focus on the proposed amended complaint and not the original complaint.").

### III. FACTS[1]

#### A. Plaintiff's Employment at HPD

In March 2012, Plaintiff was hired by HPD "to perform certain functions to assist" the dental practice "with the day to day affairs of HPD, including recruiting associate dentists, oversight and implementation of marketing plans and strategies, and overseeing implementation

---

[1] The facts are drawn from the proposed Amended Complaint, "the defendants' answer, any written documents attached to the complaint or the answer, any document that is incorporated by reference into the complaint, any document that is 'integral' to the complaint, and any matter of which the court may take judicial notice." *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 781 n.1 (2d Cir. 2019) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011)). The Court "accept[s] the allegations contained in the pleadings as true," with all reasonable inferences drawn in Plaintiff's favor. *Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016).

of financial requests" from Defendants Caldon and O'Connor. (Dkt. No. 17-23, ¶ 12). Plaintiff also "assisted in the role of office manager" and property manager. (*Id.* ¶¶ 13–14). HPD hired Plaintiff's company, Act Three Associates ("Act Three"), "to perform various tasks for the benefit" of Defendants. (*Id.* ¶ 17). Defendants "purchased maintenance equipment such as an all-terrain vehicle to be used by Act Three for the upkeep of properties . . . including the premises occupied by HPD." (*Id.* ¶ 18). At the direction of Defendants Caldon and O'Connor, "[c]ash disbursements and checks were paid to Act Three by [Plaintiff] in his capacity as office manager[] for payment of the maintenance services being provided by Act Three." (*Id.* ¶ 20). In December 2015, Plaintiff "resigned from his position with HPD." (*Id.* ¶ 21).

### B. The Plan

Defendants provided an "Employee Welfare Benefit Plan as defined by ERISA" (the "Plan"), (Dkt. No. 17-23, ¶ 7), in which Plaintiff participated "[t]hroughout the course of his employment with HPD," (*id.* ¶ 22). "According to the terms of HPD's employee handbook . . . HPD was required to pay into [Plaintiff's] Plain account an amount matching that which [Plaintiff] deposited into his Plan account by way of payroll deductions, up to three (3%) percent of [Plaintiff's] gross earnings for the calendar year." (*Id.* ¶ 23). "Although [Plaintiff] had numerous contributions deducted from his wages, . . . no statements were provided by HPD showing timely contributions to the Plan" during his employment. (*Id.* ¶ 24). Plaintiff alleges that, "on multiple occasions," he "sought to obtain quarterly-pension [sic] from HPD," (*id.* ¶ 42), but Defendants "repeatedly failed to provide said statements," (*id.* ¶ 43).

On December 21, 2015, HPD terminated its retirement benefit Plan for all participants. (Dkt. No. 10, ¶ 105; *see also* Dkt. No. 10-10). In their Answer, Defendants allege that "[a]fter the [P]lan was terminated, HPD promptly provided all 2015 annual statements to the Plan participants," including Plaintiff. (Dkt. No. 10, ¶ 106; *see also* Dkt. No. 10-11). "Upon

4

information and belief," Plaintiff alleges that "there were periods of time where deductions were being taken from [Plaintiff's] wages and no contributions were being made to the Plan by HPD." (*Id.* ¶ 28).[2] After his resignation in December 2015, Plaintiff received an "employee benefit statement from HPD . . . for the period 1/1/16 through 12/31/16," stating "that he had a total of $11,291.59 in his retirement account." (Dkt. No. 17-23, ¶ 27; *see also* Dkt. No. 10-11).

C.  **State Court Proceedings**

On April 20, 2016, Defendants sued Plaintiff in New York Supreme Court, County of Clinton. (Dkt. No. 17-23, ¶ 29). In the verified complaint filed in that action, Defendants alleged that, while employed by HPD, Plaintiff: (i) took gift cards, computer equipment, and cash from Defendants without authorization; (ii) remodeled his home with Defendants' funds; (iii) wrote unauthorized checks to himself and others using Defendants' accounts; (iv) made unauthorized adjustments to patients' accounts in exchange for items and services for Plaintiff's benefit; and (v) purchased vehicles and exercise equipment for personal use with Defendants' funds. (*See generally* Dkt. 10-5). Defendants asserted claims for breach of fiduciary duty, fraud, conversion, and unjust enrichment. (*Id.* ¶¶ 73–118).

Also, following Plaintiff's resignation from HPD, (Dkt. No. 17-23, ¶ 21), the "Clinton County Sheriff's Office investigated [Plaintiff's] . . . conduct and brought criminal charges against [Plaintiff] for grand larceny, falsifying business records, and forgery," (Dkt. No. 10, at ¶ 90). On October 20, 2016, Plaintiff pled guilty to two counts of grand larceny in the second degree in violation of New York Penal Law § 155.40, one count of grand larceny in the third

---

[2] The original Complaint alleges that: (i) despite having "ten (10) days of unpaid [sic] vacation time which had accrued," (Dkt. No. 1, ¶ 28), Plaintiff "was not, and has yet to be, reimbursed or paid back for those accrued and unused vacation days," (*id.* ¶ 31); and (ii) Plaintiff "was not paid for the period of December 12, 2015 although he worked his regular schedule" during that time, (*id.* ¶ 30). Plaintiff does not reallege these facts in his proposed Amended Complaint. (Dkt. No. 17-23).

degree in violation of New York Penal Law § 155.35, three counts of forgery in the second degree in violation of New York Penal Law § 170.10, and two counts of falsifying business records in the first degree in violation of New York Penal Law § 175.10. (Dkt. No. 10-2, at 11–15; Dkt. No. 10-4). The District Attorney stated at the conclusion of Plaintiff's plea allocution that he would not be seeking consecutive sentences "upon the condition that restitution is paid prior to or at the time of sentencing." (Dkt. No. 10-2, at 10). The judge indicated that he "hope[d] there's no issue with restitution" and encouraged the parties to "be working diligently" to resolve the issue before Plaintiff's sentencing. (*Id.* at 16).

On December 9, 2016, the parties stipulated to a discontinuance of the civil proceedings, (Dkt. No. 10-7, at 2), and shortly thereafter executed a mutual release on December 12, 2016, (Dkt. No. 10-8). The release provided that, "in return for the sum of [$400,000] and other good and valuable consideration," Defendants "release and forever discharge" Plaintiff and his related entities "from any and all claims, demands, and liabilities of every name and nature" that Defendants "ever had, now have or may ever have . . . from the beginning of the world to the date" of December 12, 2016, "including but not limited to any claims arising from, related to, or asserted" in the civil litigation discontinued on December 9, 2016. (Dkt. No. 10-8, at 2). Similarly, the release stated that, "in consideration for this release, and other good and valuable consideration," Plaintiff and his related entities "release and forever discharge" Defendants "from any and all claims, demands, and liabilities of every name and nature which Plaintiff and his related entities "ever had, now have or may have . . . from the beginning of the world to the date" of December 12, 2016, "including but not limited to any claims arising from, related to, or asserted" in the civil litigation discontinued on December 9, 2016. (*Id.*). Plaintiff alleges that, as a result of the state court civil action, he "paid restitution for all claims against him in the sum of

6

$475,904.13." (Dkt. No. 17-23, ¶ 30). Despite the payment, "Defendants are still in possession of various items that [Plaintiff] paid restitution towards, including but not limited to, office chairs, furniture, and computer equipment." (*Id.* ¶ 31).

At Plaintiff's sentencing hearing on December 21, 2016, Plaintiff's criminal counsel stated that Plaintiff had paid "restitution totaling nearly $480,000. The first . . . $80,000 he paid on his own volition prior to any charges being brought when he realized that his life and actions were spiraling out of control. . . . I've never seen this amount of restitution being able to be paid up front . . . and I think that speaks wonders for Kevin's . . . recognition of what he did wrong." (Dkt. No. 10-3, at 12–13). Although Plaintiff requested probation in lieu of jail time, Plaintiff was sentenced to four months in jail followed by five years of probation. (Dkt. No. 10-3, at 24).

## IV. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(c)

The standard of review for a motion under Rule 12(c) is the same as for a motion under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "For both motions, the Court must accept the allegations contained in the pleadings as true and draw all inferences in the non-movant's favor." *Neopharm Ltd.*, 170 F. Supp. 3d at 615 (citing *Bank of N.Y.*, 607 F.3d at 922). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

### B. Materials the Court May Consider on a Motion for Judgment on the Pleadings

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir. 2009)). "'A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" *Id.* (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted)).

Plaintiff contends that "Defendants have not applied the proper standard of review" because their "Answer has many exhibits annexed that are outside the scope of the actual pleadings." (Dkt. No. 17-3, at 11). Defendants attached multiple exhibits to their Answer, (Dkt. No. 10), including HPD's employee handbook, (Dkt. No. 10-1), the transcript of Plaintiff's plea allocution and sentencing, (Dkt. No. 10-2, -3), Defendants' complaint in the state court civil proceedings, (Dkt. No. 10-5), the stipulation of discontinuance and December 12, 2016 release in which Plaintiff agreed to pay $400,000 in exchange for termination of the state court civil proceedings, (Dkt. Nos. 10-7, -8), and various documents related to the Plan that is the basis for Plaintiff's ERISA claims, (Dkt. Nos. 10-9 to 10-11). Because "a written instrument that is an exhibit to a pleading is *part of* the pleading for all purposes," Fed. R. Civ. P. 10(c) (emphasis added), the Court will consider these documents in deciding Defendants' motion for judgment on the pleadings. *See L-7 Designs, Inc.*, 647 F.3d at 422 ("[I]n reviewing . . . [the defendant's] motion for judgment on the pleadings, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto, and we also consider the [documents] attached to [defendant's

8

answer]."); *see also Epstein v. N.Y.C. Dep't of Educ.*, No. 18-cv-03686, 2019 WL 2191366, at *2, 2019 U.S. Dist. LEXIS 85464, at *4 (E.D.N.Y. May 21, 2019) (explaining that exhibits may be taken into consideration on Rule 12(c) motion because "[t]here is no question that the email and letter exhibits were attached to [defendant's] Answer").[3]

Furthermore, Plaintiff has attached an affidavit and multiple documents to his opposition to Defendants' motion that are not attached to the proposed Amended Complaint[4] or Defendants' Answer. (*See* Dkt. Nos. 17-2, -4 to -8, -10 to -22). The Court will consider certain of these documents to the extent they are "integral" to Plaintiff's claims or incorporated by reference into the proposed Amended Complaint. (*See* Dkt. Nos. 17-13 (additional documents related to the Plan), -21 to -22 (screenshots of HPD's YouTube account and a still from a video of Plaintiff)). The Court will not consider the affidavit, (Dkt. No. 17-2), however, because "generally, courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018) (summary order) (citing *Faulkner v. Beer*, 463 F.3d 130, 135 n.1 (2d Cir. 2006)). Nor will the Court consider the remainder of the documents, (*see* Dkt. Nos. 17-4 to -8, -10 to -12, -14 to -20), because they do not fall into any of the enumerated categories of materials to which a court may look when deciding a motion for judgment on the pleadings. *See Vail v. City of New York*, 68 F. Supp. 3d 412, 421 (S.D.N.Y.

---

[3] Moreover, several of the documents attached to Defendants' Answer are referenced throughout the proposed Amended Complaint. (*See* Dkt. No. 17-23, ¶¶ 7, 22, 27, 67 (Plan documents), ¶ 23(HPD employee handbook), ¶¶ 29–31, 77–87 (state civil action documents and release)). And, the Court may take judicial notice of the remainder of the documents "not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). The Court's consideration of the documents attached to Defendants' Answer is therefore warranted on the additional bases that they are either incorporated by reference into the proposed Amended Complaint, (Dkt. Nos. 10-1, -8 to -11), or publicly available materials of which the Court may take judicial notice, (Dkt. Nos. 10-2 to -7).

[4] Although Plaintiff offers his affidavit "in opposition" to Defendants' motion and "in support of [his] Cross-Motion to amend the Complaint," (Dkt. No. 17-2, ¶ 2), nowhere does Plaintiff indicate that the extraneous materials attached to his opposition are attached to the proposed Amended Complaint. *See* L.R. 7.1(a)(4) ("[A] proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects."). Nor does the proposed Amended Complaint cite to any exhibits or attachments.

2014) ("The Court declines to consider the documents Plaintiff attached to his Opposition . . . because Plaintiff does not reference them, explicitly or implicitly, in his Second Amended Complaint, nor does he heavily rely on the documents.").

## V. DISCUSSION

### A. ERISA Claim

Plaintiff asserts claims under sections 502 of ERISA, 29 U.S.C. § 1132, alleging that Defendant HPD breached its fiduciary duty as a plan administrator and Defendants HPD, O'Connor, and Caldon interfered with his access to Plan benefits, (Dkt. No. 17-23, ¶¶ 40–44), by failing to provide him with quarterly Plan statements "from December 2015," (*id.* ¶¶ 39, 44). Plaintiff seeks $400,000 as "restitution" for the ERISA violations alleged. (*Id.* at 3, 13). Defendants argue that, because "Plaintiff was simply not entitled to receive quarterly statements" under ERISA or the terms of the Plan, his claim must be dismissed. (Dkt. No. 18, at 5, 8–11). Defendants also argue that, because Plaintiff was not entitled to receive an annual report until September 2016, the December 12, 2016 release bars Plaintiff's ERISA claims. (Dkt. No. 13-4, at 13).[5]

#### 1. Failure to Provide Benefit Statements

Section 502(a)(1)[6] of ERISA creates a right of action for a participant or beneficiary of a plan to "recover benefits due . . . under the terms of his plan, to enforce his rights under the terms

---

[5] Because the Court concludes that Plaintiff has failed to state a claim under ERISA, *see infra* Sections V.A.1–2, it need not reach the issue of whether such claims are barred by the December 12, 2016 release. (*See* Dkt. No. 13-4, at 13).

[6] The proposed Amended Complaint purports to state a cause of action for "breach of fiduciary duty under 29 U.S.C. 1132(a)(2)," rather than 29 U.S.C. § 1132(a)(1). (Dkt. No. 17-23, at 6). Section 1132(a)(2) of title 29, however, creates a right of action for "appropriate relief" under section 409 of ERISA. Under section 409, a plan fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from such breach." 29 U.S.C. § 1109. Plaintiff, however, has not alleged any "losses to the plan" as a result of their failure to provide him with quarterly statements. Furthermore, Plaintiff seeks monetary relief for himself, but the remedy under subsection (a)(2) is "solely limited to recovery on behalf of the plan." *Banyai v. Mazur*, No. 00-cv-9806, 2007 WL 959066, at *3, 2007 U.S. Dist. LEXIS 25275, at *10

of the plan," or seek relief under subsection (c). 29 U.S.C. § 1132(a)(1). Subsection (c) provides, in relevant part:

> Any administrator (A) who fails to meet the requirements of . . . section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). Under section 105(a) of ERISA, 29 U.S.C. § 1025(a), a plan administrator is required to automatically "furnish a pension benefit statement" to plan participants at intervals determined by the degree of control a participant has over his or her account. 29 U.S.C. § 1025(a)(1)(A)(i)–(ii). Specifically, a statement must be furnished: (i) "at least once each calendar quarter" to participants who have "the right to direct the investment of assets in [their] account under the plan"; or (ii) "at least once each calendar year" to participants who do "not have the right to direct the investment of assets in that account." 29 U.S.C. § 1025(a)(1)(A)(i)–(iii). The statute further provides that pension benefit statements "shall indicate, on the basis of the latest available information . . . the total benefits accrued, and . . . the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable." 29 U.S.C. § 1025(a)(2)(A).

Plaintiff's argument that "[p]ursuant to ERISA § 1025, HD [sic] was required to provide a pension benefit statement to employees at least once each calendar quarter," (Dkt. No. 17-23,

---

(S.D.N.Y. Mar. 29, 2007). The Court therefore construes Plaintiff's claim as one under 29 U.S.C. § 1132(a)(1), which creates a right of action for violations of 29 U.S.C. § 1025—the statutory provision Plaintiff repeatedly cites as the basis for his claim. (*See* Dkt. No. 17-23, ¶¶ 8, 11, 36, 42).

¶ 36), is without merit. As indicated above, a plan administrator must furnish quarterly statements only where participants have the right to direct the investment of assets in their accounts. 29 U.S.C. § 1025(a)(1)(a)(i). The terms of the Plan, however, state that a "Trustee or another designated person or entity is responsible for the investment of all assets held by the Plan." (Dkt. No. 10-9, at 9). Because Plaintiff did "not have the right to direct the investment of assets in that account," Plaintiff was entitled to annual statements only; he has therefore failed to state a claim based on Defendants' alleged failure to furnish quarterly statements. 29 U.S.C. § 1025(a)(1)(A)(ii).

Moreover, contrary to his allegation that Defendants "never provided" statements, (Dkt. No. 17-23, ¶ 25), there is no dispute that Plaintiff in fact received annual statements for 2015 and 2016. Both parties have attached as exhibits Plaintiff's annual statement covering the time period of January 1 to December 31, 2015. (Dkt. No. 17-13, at 1; Dkt. No. 10-11, at 3). While Plaintiff does not indicate when he received the 2015 annual statement, Defendants assert in their Answer that "HPD promptly provided all 2015 statements to the Plan participants," including Plaintiff, "after the plan was terminated" on December 21, 2015. (Dkt. No. 10, ¶ 104). Plaintiff also acknowledges that, "after he was terminated" in December 2015, he received an annual statement covering January 1 to December 31, 2016. (Dkt. No. 17-23, ¶¶ 27, 39). Because Plaintiff does not allege facts indicating when he received the annual statements that are contained within in the record, he has failed to plausibly allege that Defendants failed to comply with section 105 "from December 2015" by providing him with annual benefit statements at least once each calendar year. Accordingly, even if Plaintiff's claim is construed as a claim based upon a failure to provide *annual* statements, Plaintiff fails to state a claim for violations of section 502(c)(1)(A) of ERISA.

Nor has Plaintiff plausibly alleged that Defendants that failed or refused "to comply with a request for any information which [an] administrator is required . . . to furnish . . . within 30 days after such request." 29 U.S.C. § 1132(c)(1)(B). Plaintiff alleges that, although he "requested statements on numerous occasions," Defendants "never provided" quarterly statements "evidencing timely contributions to the Plan by HPD." (Dkt. No. 17-23, ¶¶ 24–25). As explained above, however, Plaintiff was not entitled to quarterly statements. Moreover, the record indicates that Plaintiff *did* receive annual benefit statements that apparently reflected contributions by HPD. (Dkt. Nos. 17-13, at 1–2 (reporting "profit sharing investment" and "safe harbor investment" balances)). Thus, because he has failed to allege facts establishing when his requests were made and when he received the annual benefit statements in the record, he cannot plausibly state a claim that Defendants failed or refused to furnish annual statements within 30 days of his request in violation of section 502(c)(1)(B).[7]

### 2. Interference with Protected Right

To the extent Plaintiff intends to assert a claim under section 510 of ERISA, 29 U.S.C. § 1140, that provision is inapplicable to the facts alleged. (Dkt. No. 17-23, ¶¶ 40–44). Under section 510, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against an [ERISA plan] participant for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such a participant may become entitled under the plan." 29

---

[7] Furthermore, section 105(a) "unambiguously requires a plan administrator to furnish a pension benefit statement that indicates 'the total benefits accrued,' and the 'nonforfeitable pension benefits.' . . . There is no requirement in ERISA § 105(a) that the plan administrator disclose the supporting calculations underlying the amounts of accrued benefits." *Bilello v. JPMorgan Chase Ret. Plan*, 649 F. Supp. 2d 142, 169 (S.D.N.Y. 2009). Rather, a plan administrator is required under section 104 to disclose detailed financial information in an annual report. *See* 29 U.S.C. § 1023(b)(3); 29 C.F.R. § 2520.104b-10(d). Under section 104 of ERISA, a plan administrator "shall furnish to each participant" a summary of the annual report "within 210 days after the close of the fiscal year of the plan," or the full annual report "upon written request of any participant." 29 U.S.C. § 1024(b)(4). Plaintiff, however, does not allege that Plaintiff's failed to furnish an annual report summary, nor does he allege that any of his requests were in writing.

13

U.S.C. § 1140. The provision "makes it unlawful for an employer to, among other things, terminate an employee either in retaliation for using a qualified employee . . . plan or in order to interfere with the employee's use of that plan." *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 54 (2d Cir. 2012); *see also Ello v. Singh*, 531 F. Supp. 2d 552, 569 (S.D.N.Y. 2007) (explaining that section 510 "was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights" (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)).

Here, Plaintiff alleges that he "sought to obtain quarterly-pension statements" from Defendants "on multiple occasions," but Defendants "repeatedly failed to provide said statements." (Dkt. No. 17-23, ¶¶ 42–43).[8] "A § 1140 claim, however, 'requires more than interference with [the] attainment of benefits. The interfering [defendant] must discharge, discipline or discriminate against a participant for the purpose of interfering with the attainment of benefits." *Turcotte v. Blue Cross & Blue Shield of Mass., Inc.*, No. 07-cv-4023, 2008 WL 4615903, at *6, 2008 U.S. Dist. LEXIS 86807, at *18 (S.D.N.Y. Oct. 14, 2008) (quoting *Blessing v. J.P. Morgan Chase & Co.*, 394 F. Supp. 2d 569, 582 (S.D.N.Y. 2005)). Plaintiff does not allege that he was discharged, fined, suspended, expelled, disciplined, or discriminated against in retaliation for requesting quarterly statements or engaging in any other ERISA-protected activity. *Cf. Roeder v. General Signal Corp.*, 901 F. Supp. 124, 127 (W.D.N.Y. 1995) (declining to dismiss section 510 claim where plaintiff alleged that he was forced to retire in retaliation for requesting pension information protected under section 105).

---

[8] As Defendants point out, "Plaintiff only alleges that Defendants failed to provide him with quarterly statements"; the proposed Amended Complaint does not assert an ERISA claim on the basis that "Defendants converted, stole, or otherwise improperly handled his retirement benefits" (Dkt. No. 18, at 10 (emphasis omitted)).

Because Plaintiff has not alleged that Defendants engaged in any conduct prohibited under section 510, his claim for interference of his ERISA-protected rights fails.[9]

### B. State Law Claims

Because Plaintiff's ERISA claims are dismissed, the Court does not have federal question jurisdiction in this case under 28 U.S.C. § 1331. Nor does the Court, in the absence of complete diversity of citizenship between the parties, have jurisdiction under 28 U.S.C. § 1332. The Court declines, in its discretion, to retain supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Doyle v. Suffolk County*, 786 F.2d 523, 525 (2d Cir. 1986) ("With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims."). Accordingly, Plaintiff's state law claims are dismissed without prejudice. *See Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 332 (E.D.N.Y. 2017) (declining to exercise supplemental jurisdiction over state law unjust enrichment and breach of contract claims "[i]n light of the dismissal of Plaintiffs' ERISA claims").

---

[9] In the "Jurisdiction and Venue" section of the proposed Amended Complaint, Plaintiff states in passing that he seeks "restitution" for Defendants' failure to properly fund the plan in violation of section 302 of ERISA. (Dkt. No. 17-23, ¶ 11). He also alleges that, "[u]pon information and belief, there were periods of time where deductions were being taken from [Plaintiff's] wages and no contributions were being made to the Plan by HPD." (*Id.* ¶ 28). This theory of recovery, however, is not asserted as a claim under any of the ERISA-related causes of action. (*Id.* ¶¶ 35–44). Furthermore, Plaintiff has failed to plead any nonconclusory facts that plausibly allege that Defendants failed to properly fund the plan.

### C. Leave to Amend

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Because Plaintiff's proposed Amended Complaint fails to allege a plausible federal claim, Plaintiff's cross-motion to amend is denied as futile. *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Plaintiff has already had one opportunity to amend and does not requested further leave to file a second proposed Amended Complaint. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made." (citation omitted)). Accordingly, Plaintiff's federal claims are dismissed with prejudice.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend the Complaint (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that Plaintiff's federal claims are **DISMISSED with prejudice** and Plaintiff's state law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

Brenda K. Sannes
U.S. District Judge

Dated: August 23, 2019
Syracuse, New York